UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**RAN, INC.,** a Michigan Corporation **d/b/a**
**RANDY'S SAUSAGE**,
**RANDALL L. BELL,** an Individual, and
**NANCY J. BELL**, an Individual,

   Plaintiffs,       CIVIL NO.

v.               HON.

**UNITED STATES OF AMERICA**,   MAG. JUDGE

   Defendant.

## COMPLAINT

The Plaintiffs, RAN, INC., a Michigan Corporation doing business as RANDY'S SAUSAGE, RANDALL L. BELL, an individual, and NANCY J. BELL, an individual, by and through their undersigned counsel, and hereby file this Complaint against the UNITED STATES OF AMERICA, on the grounds set forth herein, and in support thereof, states as follows:

### FACTUAL BACKGROUND

1. The Plaintiffs own and operate a retail food store located at 1429 Gratiot Ave., Suite 106, Detroit, Michigan, and named Ran, Inc., doing business as Randy's Sausage (and referred to hereafter as "Randy's").

2. In pertinent part, Randy's has been in business for forty-six (46) years, having incorporated on or about June 30th, 1978.

3. Prior to opening and creating Ran, Inc., the Plaintiff Randall Bell operated a sole proprietorship involved in the retail sales of food, which began in 1971. When Ran, Inc. was

established, it took possession of the assets from Plaintiff Bell's prior Sole Proprietorship operation – no formal transfer ever took place.

4. Nearly twenty (20) years ago, the Plaintiffs applied to the United States Department of Agriculture (USDA), Food & Nutrition Service (FNS) to participate as an authorized retailer in the Supplemental Nutrition Assistance Program (hereinafter, "SNAP").

5. The Defendant reviewed their application and authorized them to participate in the program. Since then, a number of re-authorizations of Randy's SNAP participation have been conducted by the Defendant.

6. However, the last two reauthorizations have been more problematic than the first few.

7. In 2018, the Defendant processed a SNAP reauthorization application from the Plaintiffs, as well as a voluminous amount records and information regarding the business' operations.

8. During such process, the Defendant issued a withdrawal letter, complaining that FNS had not received the Plaintiffs 2017 business tax return, which at the time of the application had not been completed.

9. The Plaintiffs, unable to comply with the Agency's request, were forced to file a request for administrative review of the withdrawal and brief the matter fully to the Agency's Administrative and Judicial Review Branch.

10. The Agency subsequently rescinded its withdrawal letter without specific comment and authorized the SNAP application whilst simultaneously mooting the administrative review.

11. Five (5) years later, in 2023, the Agency again requested the Plaintiffs to complete the SNAP reauthorization application.

12. The Plaintiffs timely filed their reauthorization request with the Agency.

13. On December 1st, 2023, the Defendant submitted a letter (referred to herein as the "Additional Documents Required" or "ADR" letter and attached hereto as **Exhibit A**) requesting ten categories of documents:

    a. An affidavit stating that the current owners/officers/members are not connected with any previously disqualified persons and also reporting any criminal convictions or license revocations;

    b. All current business licenses (liquor license, food license, vendor license or any other similar license to do business) in the name of the Plaintiffs' business;

    c. Copies of the articles of incorporation, including a list of current officers/shareholders/LLC members;

    d. A bill of sale and sales contract transferring ownership of assets of the business (inventory, equipment, building, rights to apply for transfer of liquor licenses, any other assets of value) to the owner applying for SNAP authorization;

    e. The deed or warranty deed for the building in which the business operates, or alternative, a copy of the pertinent leases;

    f. A letter from the Plaintiffs' bank or financial institution identifying the authorized signers for the business on any accounts used by the business;

    g. Federal personal tax returns for the most recent filing year for all owners/officers/LLC members; and

    h. Federal business tax returns for the most recent filing year (if available) for all owners/officers/LLC members.

14. The Agency's request for the store's "bill of sale" or "sales contract" was a nonsensical request as the Plaintiffs had been in operation nearly fifty (50) years, and the Agency was fully aware that the store had been operating since at least 2004 as an authorized SNAP retailer.

15. The bill of sale/sales contract from 1978 – should one have ever existed – has no bearing on SNAP licensure of retailers under either the regulation, 7 C.F.R. §278.1, or under the statute, 7 U.S.C. §2018.

16. Indeed, the source of the inventory and assets of a retailer has nothing to with the two eligibility criterions set forth by the Agency's own regulation.

17. Furthermore, the Plaintiffs had been previously authorized without such information being provided to the Agency.

18. The ADR letter gave a nightmarishly short ten (10) days to provide the requested documents by USPS delivery: "Failure to respond within 10 days may result in withdrawal of your authorization to accept SNAP benefits... If the information you submit is inadequate (i.e., unclear, or incomplete) and does not demonstrate your eligibility for authorization, your authorization will be withdrawn." *See* **Exhibit A**, page 2.

19. Despite the alarmingly short response deadline, the Plaintiffs complied with the Agency's request and submitted all of the requested documents in their possession, custody and control.

20. The production was delivered to the Agency on Wednesday, December 6th, 2023, as tracked by the U.S. Postal Service's tracking number EJ249866649US.

21. For nearly two (2) months, the Agency made no comment and submitted no additional requests for documentation or information.

22. Then, on January 31st, 2024, Program Specialist Johnathon L. Snyder sent a withdrawal letter to the Plaintiffs. This document is attached hereto as **Exhibit B** and is referred to herein as the "Withdrawal Letter."

23. In the Withdrawal Letter, Section Chief Cassandra Traux set forth the basis for the licensure withdrawal:

> "On 12/01/2023 we sent you a letter requesting information needed to complete the reauthorization process (copy enclosed). We did not receive the information requested by the deadline provided. Therefore, the SNAP authorization for the location listed above will be withdrawn within 10 calendar days of your receipt of this letter."

24. The Plaintiffs, unaware of exactly where or how their response had been deficient, filed a request for Administrative Review on or about February 2nd, 2024.

25. The Agency failed to respond or take any action on the Administrative Review request until August 20th, 2024, when the case was assigned to Administrative Review Officer (ARO) Amie Churchill, and the briefing deadline was established for September 10th, 2024.

26. Still, the Defendant had wholly failed to identify how the Plaintiffs' production had been deficient.

27. Nevertheless, the Plaintiffs submitted their briefing on September 6th, 2024, prior to the briefing's deadline.

28. Seven (7) days later, ARO Churchill issued the Agency's Final Agency Decision (FAD), upholding the withdrawal. The FAD is attached hereto as **Exhibit C**. The basis for ARO Churchills' decision was set forth as follows:

> "By a letter dated December 1, 2023, the Retailer Operations Division requested additional documentation from Appellant, including a notarized affidavit, business licenses, business filings, articles of incorporation, bill of sale and sales contract, property deed or least, bank account information, and tax returns. The information was due within ten days of receipt of the December 1, 2023, letter. According to agency records, Appellant did not submit

> all of the requested information to the Retailer Operations Division by the deadline. Specifically, Appellant did not submit the bill of sale and sales contract transferring ownership assets of the business to Appellant. On review, Appellant, through counsel, stated that the bill of sale or sales contract was not applicable."

29. This was the first time the Plaintiffs had heard that the issue raised by the Agency was the non-existent 1978 bill of sale/sales contract.

30. Had such been made clear to the Plaintiffs before then, they would have explained why the request was not applicable to them.

31. The Agency's decision to deny the SNAP license for lack of production of non-existent documents was inappropriate under the regulation (7 C.F.R. §278.1) and under the statute (7 U.S.C. §2018) – neither of which require a SNAP applicant to have such documentation.

32. Furthermore, given the fact that the records sought are decades old, the request for such information is immaterial to the SNAP application as a whole. No eligibility criteria for an application in 2024 could possibly turn on how a store obtained inventory and equipment fifty years before.

33. The Plaintiffs' have incurred attorneys' fees and costs in bringing this litigation, and seek to be reimbursed for such fees and costs pursuant to the Equal Access to Justice Act.

### COUNT I; JUDICIAL REVIEW

34. The Plaintiffs' restate each of the averments set forth above as though fully set forth herein.

35. The Plaintiffs applied for SNAP licensure pursuant to 7 U.S.C. §2018 and were previously approved and reapproved a total of three times.

36. In none of the prior SNAP applications has the Agency requested documentation pertaining to the origination of Ran, Inc.'s initial assets and equipment.

37. The Plaintiffs filed an application for reauthorization to participate in the Supplemental Nutrition Assistance Program as an authorized retailer again in 2024.

38. The Agency denied the application because the Plaintiffs did not produce a Bill of Sale and other records pertaining to the incorporation of Ran, Inc.

39. Such denial was errant and inappropriate under the statute and the regulation.

40. No such records exist, and thus the Plaintiffs have no ability to produce them.

41. The regulations do not require the production of such records for authorization, as is evidenced by Plaintiffs' three prior approvals from the Defendant to participate in SNAP.

42. The Plaintiffs qualify for SNAP licensure under 7 U.S.C. §2018 and 7 C.F.R. §278.1.

43. The Plaintiffs' inventory and sales satisfy the appropriate criteria for participation in the program as set forth in more detail in 7 C.F.R. §278.1.

44. Pursuant to 7 U.S.C. §2023(a)(13)-(15), the Plaintiffs are entitled to a hearing and *trial de novo* Judicial Review of the licensure request, and hereby make such request.

45. This Court has the authority to reverse the Defendant's licensure denial, and grant the license pursuant to 7 U.S.C. §2023(a)(16) and 7 C.F.R. §278.1.

46. The Plaintiffs' SNAP licensure should have been authorized again by the Defendant pursuant to the rules and regulations, and this Court should grant such licensure.

47. The Plaintiffs should be awarded their attorney's fees and costs.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court enter JUDGMENT against the Defendant, the United States of America, operating through the United States Department of Agriculture, Food & Nutrition Service, order the Plaintiffs' SNAP licensure to be

re-authorized for a term of five (5) years, and awarding the Plaintiffs' their attorneys' fees and costs.

Dated: October 8, 2024                    Respectfully submitted,

**METROPOLITAN LAW GROUP, PLLC**

/s/ Andrew Z. Tapp
Andrew Z. Tapp, Esq.
Florida Bar Number:  68002
1971 W. Lumsden Road, #326
Brandon, Florida 33511-8820
Telephone:    (813) 228-0658
Fax:          (813) 330-3129
Email:        Andrew@Metropolitan.Legal
              LaJeana@Metropolitan.Legal

**COUNSEL FOR PLAINTIFFS**